| 14 | 469 |
| 138 | 250 |
| 14 | 469 |
| 163 | 639 |
| 14 | 469 |
| 86a | 211 |
| 14 | 469 |
| a189 | 542 |
| 14 | 469 |
| 195 | 614 |

KINGSLEY HIMES, Plaintiff in Error, *v.* JACOB KEIGHBLINGHER, Defendant in Error.

### ERROR TO KNOX.

The recording of a deed affords *primâ facie* evidence of its delivery.   A declaration, that counts on the malfeasance of a voluntary bailee, is good.   Therefore when a deed is delivered to a person as an escrow, and he accepts it as such, but afterwards and while it so remains an escrow, wrongfully and without the consent of the grantor who delivered the deed to him as aforesaid, causes it to be recorded in the county where the lands described therein are situated, by means whereof the said grantor sustains injury, and incurs expense in perpetuating the testimony to show that said deed was not delivered, he is liable in damages to the grantor for such wrongful act.

THIS was an action of trespass on the case, brought by the plaintiff in error against the defendant in error in the Knox Circuit Court, at the September term, 1852, KELLOGG, Judge.   A demurrer was filed to the declaration, which was sustained by the court, and judgment thereon for the defendant below.   The plaintiff below sued out a writ of error.   The character of the declaration sufficiently appears in the opinion of the court.

MANNING and DOUGLAS, for plaintiff in error.

R. S. BLACKWELL, for defendant in error.

CATON, J.   This declaration is in case and recites, by way of inducement, a contract between the plaintiff and one Watts, by which the former agreed to sell to the latter certain premises for

the sum of two hundred and fifty dollars, payable in specified instalments; a deed to be executed when a specified part of the consideration was paid; and it was provided that either party failing to perform should forfeit to the other the sum of fifty dollars, and the agreement should be void. The declaration further recites, that the plaintiff executed and acknowledged a deed, which is set out, purporting to convey the premises to Watts, to whom, in the presence of the defendant and other witnesses, he tendered the deed upon condition that Watts should perform on his part, which he failed to do, whereupon, for the purpose of enabling himself to show his readiness and ability to perform, and also for the purpose of claiming and insisting upon the forfeiture of the said agreement; the plaintiff proposed to the defendant to deposit the deed with him, to be by him safely kept for the plaintiff, to be identified by the defendant as a witness, and to be used as evidence should occasion require it; to which proposal the defendant assented, and accepted the deed from the plaintiff for the purposes specified and none other; whereby it became the duty of the defendant to keep and retain the deed solely for the purposes specified without any gross negligence on his part, and especially it became his duty not to place or cause to be placed the said deed upon record; "yet the said defendant, not regarding his duty in this behalf, but contriving and intending to wrong, injure, deceive, damnify, and defraud the said plaintiff in that behalf, afterwards, to wit, on the 24th day of October, 1848, and while the said defendant still retained possession of the said deed, obtained as aforesaid, to wit, at the county aforesaid, wrongfully and fraudulently, and without the knowledge or assent of the said plaintiff, gave the said deed to the recorder of the said county of Knox, and procured the said recorder to record the said deed among the records of his office as recorder aforesaid, as if the said deed had been delivered to the said Thomas F. Watts unconditionally and absolutely;" whereby it was wrongfully made to appear that the plaintiff had conveyed the premises in question to Watts; whereby the plaintiff lost the profits he might have made by the sale of the land, amounting to the sum of two hundred dollars, and that he was also put to great expense and trouble, and laid out large sums of money, specified, in instituting proceedings under our statute to perpetuate the evidence that the deed had never been delivered, but that it had been only left with the defendant for the purposes specified, concluding with a proper averment of damages, &c. To this declaration a demurrer was sustained, to reverse which decision the case is presented to us.

This declaration does not count on a mere non-feasance or neglect on the part of the voluntary bailee of the deed, but it is for a malfeasance, for an affirmative wrongful act. It is admitted by the demurrer to the declaration that the defendant went out of his way, and with the design to injure and defraud the plaintiff, parted with the possession of the deed, and put it upon the records of the county, and thus gave notice to the world, in an authoritative manner, that the plaintiff had conveyed the premises to Watts. He published to all mankind, in the most solemn manner that it could be done, that the plaintiff had no longer any title to the premises, and made it apparent that none could negotiate with him for their purchase, with any expectation of getting a good title. The defendant was certainly bound to conduct himself as fairly and justly in the premises as a stranger would have been, and yet to have done this would have rendered a stranger liable for any damage naturally resulting from the act.

Although the record would not be conclusive evidence of the delivery of the deed, we have no hesitation in saying that it constitutes *primâ facie* evidence of that fact. Even against a stranger in possession, a certified copy of that record is made, by our statute, competent evidence of a conveyance to Watts, against the plaintiff himself in an action to recover the possession, upon the mere affidavit of the stranger that it was out of his power to produce the original deed. R. S. ch. 24, § 25. And the reception of such evidence, without any further evidence of the delivery of the deed, is a matter of every day's practice in our courts; and an objection to the record till an actual delivery is proved is never thought of unless there be some evidence tending to prove a want of delivery. Being thus exposed, common prudence dictated that the plaintiff should adopt some measures to guard against the dangers by which he was thus threatened. This was rendered necessary by the tortious act of the defendant, and the trouble and expense of these measures were the necessary result of that act. The measures adopted were to perpetuate the evidence showing that the deed had never been delivered. It was necessary and proper that this evidence should be spread upon the public records of the country, not only to secure the rights of the plaintiff himself, but it was due to the public, that none might be left to purchase from Watts his apparently good title. The expense of these proceedings are made the foundation of the special damages claimed in the declaration, and they are abundantly sufficient in our judgment to maintain the action. There may be, and probably is no doubt, that a bill in equity might

have been filed to cancel the record of the deed, and thus remove the cloud from the plaintiff's title. 1 Paige, 384. But that was not the only, if it was the most effectual mode of accomplishing the desired object, and it was not for the defendant to dictate what course the plaintiff should take to remedy the evil which had been wrongfully brought upon him, so as the remedy adopted was the legal one. He might as well complain that the plaintiff did not employ a particular lawyer. Shall the man who maliciously poisons me, complain that I did not employ his favorite physician, or that the treatment adopted was allopathy instead of homœopathy?

But it was objected, that the declaration does not aver that the plaintiff himself had title to the land. That, we think, is not essential to the maintaining of the action, however important it may be upon the assessment of the damages. The deed at least, was the plaintiff's property, and he claimed to own the land, and he had such a title at least as Watts agreed to purchase. If in truth the plaintiff's title was defective, that would not justify the defendant in his wrongful act. It was not for him to judge of his neighbor's rights, and betray the trust reposed in him. He did a wrongful act, which resulted in a damage to the plaintiff, and for that damage he must be held liable.

The demurrer was improperly sustained by the circuit court, and its judgment must be reversed and the cause remanded.

*Judgment reversed.*