<hr/>

JOHN McEWEN

*v.*

SAMUEL H. KERFOOT.

1. SPECIAL PLEA—*when it amounts to the general issue.* In an action of assumpsit to recover "for commissions on sale of land made by the plaintiff for the defendant, at the defendant's request," the defendant pleaded specially, that "the plaintiff, not being the agent of the defendant, but without authority thereto, pretended to sell" the real estate of the defendant, and executed and caused to be recorded a writing purporting to be a sale thereof, by reason of which, and to avoid such pretended sale, the defendant had incurred expense and damage which he offered to set off against such claim as the plaintiff might establish. This plea did not amount to the general issue. Its object was simply to set off unliquidated damages arising out of the subject matter of the suit.

2. It did not seek to put in issue the question of agency, for the agency was not averred in the declaration. The recital in the plea on that subject was only by way of protest, that the pleader might not be considered as admitting the agency of the plaintiff.

3. AGENCY—*when the authority of an agent ceases.* A party was employed as an agent to sell certain real estate belonging to his principal. The agent negotiated a sale as directed, by a verbal agreement, which the principal afterwards repudiated. Subsequently, the agent executed a written instrument to the purchaser, as evidence of the sale, upon the terms stipulated in the prior verbal agreement. *Held,* that when the agent found his principal had repudiated the sale, although the repudiation may have been improper, his functions as an agent, so far as regarded that sale, were at an end, and he had no right afterwards, under pretence of protecting the purchaser, or to embarrass his principal, to give the purchaser the written contract.

4. Same — *whether agent entitled to compensation.*    Still the agent was entitled to his commissions for the sale made by him within his authority.

5. Same — *liability of agent to his principal — set off — unliquidated damages.* And the principal was entitled to, and could set off in an action brought by the agent for the recovery of his commissions, any damages he may have incurred in consequence of the execution of the written contract by the agent after he was made aware the principal had repudiated the sale.

Appeal from the Superior Court of Chicago.

This was an action of assumpsit brought in the court below by Samuel H. Kerfoot, against John McEwen, to recover "for commissions on sale of land made by the said plaintiff for the said defendant, at the said defendant's request."

A question is made whether a special plea, filed by the defendant, amounts only to the general issue, and the pleadings, in view of that question, are sufficiently set forth in the opinion of the court.    The substance of that plea is, that the plaintiff, not being the agent of the defendant, or authorized so to do, sold certain real estate belonging to the defendant, and executed a written memorandum in respect thereto to the purchaser, to avoid which the defendant had incurred great expense and damages, which he sought to set off against the plaintiff's claim, alleging that these damages arose out of the same subject matter as that upon which the plaintiff's alleged cause of action is based.

The propriety of the plaintiff's action pending the transaction is brought in question, and whether he is entitled to commissions.    The circumstances connected with the sale, as developed in the testimony, are these : It seems the plaintiff was engaged in buying and selling real estate on commission in the city of Chicago, and the defendant desiring to dispose of two certain pieces of property, placed them in the hands of the plaintiff for sale, fixing the price at $6,000 for one, and $6,500 for the other, or $12,000 for both.

*John C. Garland* testified : In the summer and fall of 1863, I was engaged in purchasing real estate for John Garland, my father.    I found this property for sale at the plaintiff's

office. He told me that it belonged to McEwen, that the price was.$6,000 for one, and $6,500 for the other house, or $12,000 for the two, and where the property was situated. I called to see McEwen, but did not find him. I looked at the property, and saw Kerfoot again. I tried to buy the property for less, but Kerfoot said he would bring McEwen and me together; a day was set and we went. This was on the 20th day of October, 1863, at Kerfoot's office. Kerfoot said to McEwen, there is Mr. Garland, with whom I have been talking about your property. I then talked with McEwen, and asked him his price. He said he had already set a very low price, that his property was really worth $12,500, but if I would give $12,000 for it I could have it. In answer to my question as to whether his title was clear, he said there was a mortgage on the property which was not due, and he did not know whether the mortgagee would take the money now or not; if not, the purchaser would buy subject to the mortgage. I asked him when he could learn. He answered this afternoon or to-morrow. We then made a regular agreement to meet at the same place at 12 o'clock the next day, and then I would let him know if the mortgagee would take the money. I went out that evening and told my father. I did not agree to buy the property that day, but had till next day at 12 o'clock to decide. The next morning, the 21st, I could not keep the appointment at 12 o'clock; I went to Kerfoot's office at 10 o'clock, and told him "I would take the property with the mortgage on or off at $12,000." If on, of course the amount would be deducted from the purchase money. The next morning the 22d, I received a note from Mr. Kerfoot, asking me to come up to his office. I went there about 10 o'clock, A. M., and found Kerfoot and McEwen talking. Kerfoot asked me to repeat what I had said the day before, and I did so. McEwen said the mortgage can be taken up, but I won't sell without I get $12,500, for I have that offer. Kerfoot said, "but, Mr. McEwen, the property is sold," and when McEwen grew excited, Kerfoot said, "now you better hold your horses, Mc., and settle this

right here, and not get into trouble." McEwen then went out of the office.

The same witness, on cross-examination, testifies as follows:

No memorandum was made, nor any money paid, till after the talk at Kerfoot's office on the 22d day of October. I first learned that McEwen was dissatisfied at that talk. I did not previously know that he did not want Kerfoot to sell the property to me or my father. I really believed that he wanted Kerfoot to sell it to me, till some two weeks after the 22d. I gave a check for $1,000 to Kerfoot. I don't know that the check was not paid. I don't know whether it has been given up. I have not made any efforts to get it back, or to procure a statement from McEwen that he had no claim on it. I can't tell whether I or my father went to the bank and forbade the payment of that check. I can't tell which of us did so. At the talk in Kerfoot's office there was a good deal of high talk. Defendant told me he did not keep the appointment at noon at plaintiff's office. McEwen said he did not want any more humbugging. He said he had changed his price, and that he had an offer at $500 more. I did not learn from any other person that McEwen did not want me to have the property. I did not have any conversation with any one before said 22d of October, to that effect. I did see Thomas Allen on the 22d of October, and asked him if he had the property for sale. He said I have and I have not; that he would know the next day at 12 o'clock. he did not tell me that he had sold one of the lots for $6,500 or for any other sum. I did not see him at his office on Clark street, in this city, on the 21st day of October, 1863. I did not tell him that if the other lot was not sold I thought I would take it, nor words to that effect. I did not mention any price of the houses to him, nor did he to me.

On the part of the defendant,

*Thomas Allen* testified as follows: I am a real estate agent in Chicago, and know the parties to this case, and the property in question. I had it for sale some two weeks before the 21st of October, as agent for defendant. On the 20th

day of said October, I negotiated a sale of one of the houses and lots to John F. H. Grace, through Maclay & Kedzie, for McEwen, at $6,500. This sale was closed up—that is, the bargain was settled on the next day, the 21st. On said 21st day of October, 1863, John C. Garland, the witness for the plaintiff, came to my office on Clark street, in this city, about 10 o'clock in the forenoon. He asked me if I had the property for sale. I answered "I have—and I have not. I have sold one of the houses and lots for $6,500, and shall know to-morrow, at 10 o'clock, whether I shall have the other for sale or not." He replied, "Well, if you do, I think I shall want it," or, "will take it." We were both speaking about the property in question. This was all that was said; and he did not call again.

*John H. Kedzie* testified as follows: I am a land agent in this city, and know the parties and the property in question. With my partner, Mr. Maclay, and Mr. Allen, I negotiated a sale of one of the houses and lots to Mr. John F. H. Grace. He got the property, and McEwen paid us commissions for the sale. This sale was negotiated on the 20th day of October, between Grace and ourselves; and if the property was not sold by any other party before 12 o'clock the next day, this sale was to be carried into effect. This sale was at $6,500. There was delay in carrying it into effect; for when the abstract was furnished we found a paper had been recorded, purporting to be a sale of said property, by Kerfoot, as the agent of McEwen, to Garland; and providing for this, delayed the matter. Grace had wanted the property before, but McEwen said he would hold on until 12 o'clock on the 21st; that he was under obligations to plaintiff until that time. Defendant told us, on the 20th, that if plaintiff did not sell the property by 12 M., on the 21st, then we might sell the property on the afternoon of the 21st. I sold the property to Grace. About two weeks after the sale, I went with McEwen to Kerfoot's office to see about the matter. McEwen said to Kerfoot, "How about the sale you claim to have made to Garland." Kerfoot said in reply, "Now, Mc.,

you aint going to make any trouble about that, are you?" Then McEwen said, "How could you sell to Garland for $12,000, when I had instructed you not to sell for less than $12,500." Kerfoot admitted that he had such instructions before the memorandum of sale was made, but said that Garland claimed the property by virtue of the previous conversation.

This is all the testimony going to show the plaintiff's action in regard to the sale.

The case was submitted to the jury upon the general issue alone, and they returned a verdict for the plaintiff for $375. A motion for a new trial was overruled, and judgment entered upon the verdict. From that judgment the defendant took this appeal, and now insists that his special plea did not amount simply to the general issue, and, therefore, the plaintiff's demurrer thereto was improperly sustained; and the question also arises, whether the plaintiff was entitled, under the circumstances, to recover his commissions for negotiating the sale, and whether the action of the plaintiff in executing the memorandum of the sale to Garland after the defendant had repudiated the sale, was so far improper as to entitle the defendant to set off or recoup such damages as resulted to him from that action.

Mr. CHARLES C. BONNEY for the appellant.

Messrs. HERVEY, ANTHONY & GALT for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the court:

This was an action of assumpsit brought by Kerfoot for the purpose of recovering commissions alleged to be due to him for selling certain real estate in the city of Chicago, belonging to McEwen. The declaration contained only the common counts—the count for work and labor having this clause: "and in like sum for commissions on sale of land made by the said plaintiff for the said defendant, and

at the said defendant's request." The defendant pleaded the general issue, and the following special plea:

"And for a further plea in this behalf, the said defendant says, *actio non* because he says that he, the said defendant, hath against him, the said plaintiff, a certain claim and demand, for this, to wit: that the said plaintiff not being the agent of the said defendant, but without lawful authority thereto, pretended to sell to one John Garland, certain lands, houses and real estate of the said defendant, known and described as numbers 359 and 361 Ohio street, in the city of Chicago, and caused and permitted to be recorded in the recorder's office of said county of Cook, a memorandum in writing, purporting to be a sale of said premises to said Garland, whereby said defendant was put to great trouble, expenses, delay and annoyance in and about the bringing of a suit in chancery, and thereby bringing about a compromise of the claim of said pretended purchaser, and procuring the release and conveyance of the same, and the removal of the cloud thereby cast upon the title of said defendant to said premises, whereby the said defendant hath sustained damage for which he hath a claim and demand against the said plaintiff for the sum of one thousand dollars, and this he, the said defendant, is ready to verify, wherefore he prays judgment, and that the amount thereof may be in the first place set off against any demand which said plaintiff may establish in said action against the said defendant, and that the residue may be certified in favor of said defendant and execution awarded against the said plaintiff pursuant to the statute, etc."

The plea was afterwards amended by inserting after the averment of damages the following: "And the said defendant avers that the commissions and causes of action whereof the said plaintiff hath declared, are claimed and demanded by said plaintiff for, upon and out of the same subject matter

that is set forth in this plea; and not upon or out of any other different subject matter."

The plea, as amended, was demurred to, and the demurrer sustained. The defendant abided by his plea.

The only objection taken to this plea, in the printed argument of the defendant, is, that it amounts to the general issue, by denying the agency of the appellee. The declaration, however, nowhere avers the agency, and it can only be inferred from the clause in the work and labor count above quoted. The plea cannot be considered as seeking to put in issue what is not averred in the declaration. The object of the plea is merely to set off unliquidated damages arising out of the subject matter of the suit, and the phrase in the plea "not being the agent of the said defendant," is merely a recital, by way of protest, that the pleader may not be considered as admitting the acts complained of by him were performed under an authorized agency.

The plea does not amount to the general issue, and the demurrer, though special, should have been overruled.

We do not deem it necessary to discuss the evidence or instructions further than to say, that although Kerfoot seems entitled to his commissions for the sale made by him within the authority of McEwen, yet when he found that McEwen repudiated that sale, although he may have done so improperly, Kerfoot's functions as an agent, so far as regarded that sale, were at an end. The rights acquired by the purchaser Kerfoot should have left to him to establish as against his principal. Whether the conduct of his principal was right or wrong in repudiating the sale, it was enough for Kerfoot, as his agent, to know that he had repudiated it, and after that moment, he had no right, under pretence of protecting the purchaser, to embarrass his principal by giving the purchaser a written contract to be reduced to record, drawn upon a basis which his principal had refused to sanction. Kerfoot is entitled to his commissions, and McEwen to any damages he may have incurred in consequence of the

issuance of the written contract by Kerfoot, after he was made aware that McEwen had repudiated the sale. Judgment reversed and cause remanded.

<em>Judgment reversed.</em>