Marilyn I. GARRIS, Plaintiff-Appellant,

v.

G. R. SCHWARTZ and John S. Self, partners, d/b/a Schwartz and Self, Defendants-Appellees.

No. 76–1643.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 29, 1976.

Decided March 14, 1977.

Arlie E. Traughber, Crowder & Associates, Ltd., Columbia, Ill., for plaintiff-appellant.

Stephen W. Thomson, Edwardsville, Ill., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, and PELL and SPRECHER, Circuit Judges.

CASTLE, Senior Circuit Judge.

Plaintiff appeals from the district court's order dismissing her complaint, which invokes the court's diversity jurisdiction, on the ground that the amount in controversy did not exceed $10,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The complaint alleges that the defendants, Illinois attorneys, advised plaintiff and her family to have the revoked will of plaintiff's deceased father offered for probate and thereafter caused the will to be admitted to probate as attorneys of the named executors under the will. According to the complaint, plaintiff subsequently petitioned an Illinois court to have the will set aside and the court did so.

The complaint sets forth two counts, the first alleging that the defendants' conduct was "intentionally erroneous" and the second alleging that it was negligent. Under the first count, plaintiff sought as damages the amount of $1,500 for travel and lodging expenses and other inconveniences suffered as a result of defendants' conduct, the amount of $10,500 for fees charged by attorneys whom she employed for the protection of her interest in the estate, and the amount of $30,000 for mental anguish and anxiety suffered in the destruction of peaceful and harmonious relations with other members of the decedent's family. The second count, which repeated most of the allegations of the first count, alleged in addition that the defendants had negligently failed to have certain personal property held by the plaintiff and the decedent in joint tenancy and a $11,000 deposit payable to the plaintiff on decedent's death transferred to the plaintiff. The damages claimed in the second count were the same as those claimed in the first, except that the amount sought for attorneys' fees totalled $11,500, the sum allegedly charged for the protection both of her interests in the estate and of the additional property rights.

The district court held that, under Illinois law, plaintiff was not entitled to recover damages for emotional distress or for the cost of attorneys' fees under the circumstances alleged in the complaint and that the complaint therefore did not place an amount exceeding $10,000 in controversy. We affirm.

■ Plaintiff contends that damages for mental anguish are recoverable under the complaint because it states a claim under the theory of "intentional infliction of emotional distress," a tort recognized by the Illinois Supreme Court in *Knierim v. Izzo*, 22 Ill.2d 73, 174 N.E.2d 157 (1961). We disagree. The tort is limited to conduct that is "calculated to cause severe emotional distress in the person of ordinary sensibilities. . . ." *Id.* at 86, 174 N.E.2d at 165. Although plaintiff alleges that the defendants' advice to probate the revoked will was "intentionally erroneous," there is nothing in the complaint to suggest that it was "intended to cause emotional disturbance" in the plaintiff. *Id.* at 85–86, 174 N.E.2d at 164. This element of the tort was present in the complaints found sufficient in *Knierim* and in *Bureau of Credit Control v. Scott*, 36 Ill.App.3d 1006, 345 N.E.2d 37 (1976), also relied on by the plaintiff. Because the plaintiff does not state or imply such a purpose on the part of the defendants, her claim for damages for mental suffering must fail. *See Braun v. Craven*, 175 Ill. 401, 51 N.E. 657 (1898).

The district court denied recovery of the claimed attorneys' fees under the Illinois rule that attorneys' fees and expenses of litigation are not allowable to a successful party in the absence of statute. *Ritter v. Ritter*, 381 Ill. 549, 46 N.E.2d 41 (1943). Plaintiff asserts that this rule is limited to cases in which the fees claimed were incurred in litigation against the defendant and does not apply to cases in which they were incurred in litigation, caused by the defendant, between the plaintiff and a third party. While we recognize that this distinction finds some support in the statements of the *Ritter* court, recent decisions of the Illinois Appellate Court have extended the rule generally to exclude recovery of attorneys' fees and expenses incurred in litigation with third parties as an element of damages in actions to enforce common law duties. In *Insurance Co. of North America v. J. L. Hubbard Co.*, 23 Ill.App.3d 254, 318 N.E.2d 289 (1974), the Fourth District denied an insurance company recovery of attorneys' fees, which it had incurred in defense of an insured's action, in the company's indemnity action against its insurance agent. In *Reese v. Chicago, Burlington & Quincy R.R.*, 5 Ill.App.3d 450, 283 N.E.2d 517 (1972), *aff'd*, 55 Ill.2d 356, 303 N.E.2d 382 (1973), the Second District denied a railroad recovery of attorneys' fees incurred in negotiating a settlement with the estate of its deceased employee, killed when he was struck by the bucket of a crane, in the railroad's indemnity action against the manufacturer of the crane. In *Kniznik v. Quick*, 130 Ill.App.2d 273, 264 N.E.2d 707 (1970), the First District denied a divorced husband recovery of attorneys' fees, which he had incurred in divorce and child custody proceedings against his wife, in his action for alienation of affections against the defendant.

The courts in *Insurance Co. of North America* and *Kniznik* expressly considered the *Ritter* dicta and the early line of cases that plaintiff relies on. In each of the early cases, a defendant, falsely pretending to be the plaintiff's real estate agent, had made a contract for the sale of the plaintiff's real property to a third party and had caused the contract to be recorded. In each case, the plaintiff was allowed to recover the costs of protecting his property interest in subsequent litigation. *See Philpot v. Taylor*, 75 Ill. 309 (1874); *McEwen v. Kerfoot*, 37 Ill. 530 (1865); *Himes v. Keighblingher*, 14 Ill. 469 (1853). The *Insurance Co. of North America* and *Kniznik* courts declared that these cases should be viewed as an exception to the general rule that attorneys' fees and ordinary expenses are not recoverable and should be limited to their facts. Specifically, the court in *Insurance Co. of North America* said the exception was limited to cases in which a defendant had willfully placed the plaintiff's real property in legal jeopardy to the claims of a third party. *Insurance Co. of North America v. J. L. Hubbard Co., supra*, 23 Ill.App.3d at 262, 318 N.E.2d at 295.

In ascertaining substantive state law in a diversity case, we must accord proper regard to the decisions of intermediate state courts. As the Supreme Court has stated:

> Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). We are not convinced that the Illinois Supreme Court would reject the rule of law as announced and applied by the appellate court. It may adopt that rule to exclude as a means of enforcing common law duties recovery of a cost which, like delay, is incidental to the assertion of private rights by judicial process, except in specified circumstances where such recovery is deemed necessary to enforce a particular duty.

Plaintiff's reliance on *Freed v. Travelers*, 300 F.2d 395 (7th Cir. 1962), is misplaced. In that case, we permitted recovery of attorneys' fees and expenses, which had been

incurred by the plaintiff in defense of three personal injury actions, in the plaintiff's suit against an insurance company that was contractually obligated to defend him in the actions. The insurance company's obligation to reimburse the plaintiff did not arise out of a common law duty—such as the one asserted by the plaintiff in the instant case—but instead out of a duty that it assumed under contract.

We therefore conclude that, as a general rule under Illinois law, attorneys' fees and expenses are not recoverable as an element of damages in a suit brought to enforce a common law duty and that the plaintiff's complaint does not fit any recognized exception to that rule.

For the reasons stated above, the judgment of the district court is affirmed.

AFFIRMED.

PELL, Circuit Judge, dissenting.

In this diversity case to be decided, under the principles of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), by reference to Illinois law, where that law as pertinent is less than clear, my brothers have concluded appellant's complaint fails to allege the requisite jurisdictional amount of damages. Despite the thoughtfulness and thoroughness of their analysis, I disagree. Because of this, and because I believe an actionable breach of duty under Illinois law is alleged to have caused these damages, I would reverse and remand the case for further proceedings.

I

I quite agree with the majority that an independent emotional distress infliction theory that would activate, for jurisdictional purposes, the alleged $30,000 in emotional damages is entirely inapposite to these facts, and that jurisdiction must stand or fall on the viability, as recoverable damages in Illinois, of the attorneys' fees appellant incurred in the litigation with third parties that appellees' breach of duty is alleged to have caused. The *Erie* inquiry in diversity cases requires federal courts to determine what the highest court of the state would decide, *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940), and in my opinion the Illinois Supreme Court would decide that the attorneys' fees on the basis of the complaint in this case would be recoverable damages.

It is too well established to require extended discussion that the basic purpose of tort law, in Illinois as elsewhere, is to afford compensation for injuries sustained by one person as the result of the conduct of another. *See, e. g.,* W. Prosser, Handbook of the Law of Torts § 1, at 6 (4th ed. 1971). The principal rule of the law of tort damages, that proven actual losses are recoverable, follows logically from this basic purpose. There are exceptions to this rule, of course. Some of these, such as presumed, nominal, or punitive damages, expand amounts recoverable beyond what is proven to be necessary to make the plaintiff whole. Others limit the scope of recoverable damages to exclude some elements of actual proven loss. One of these limits is embodied in the so-called "American rule," under which, absent statutory or contractual provisions to the contrary, a successful litigant may not recover from his adversary as damages his attorneys' fees, even though such fees are indisputably part of the loss suffered as a result of the adversary's conduct. The Supreme Court succinctly stated the rationale for the "American rule" in *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967):

In support of the American rule, it has been argued that since litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel. . . . Also, the time, expense, and difficulties of proof inherent in litigating the question of what constitutes reasonable attorney's fees would pose substantial burdens for

judicial administration. [Citations omitted.]

In *Ritter v. Ritter*, 381 Ill. 549, 555–56, 46 N.E.2d 41 (1943), the Illinois Supreme Court emphasized the factors set out in the first sentence quoted above, and the undesirability of clogging the judicial system with successive lawsuits to obtain fees from previous suits, as the policies underlying Illinois' adherence to the "American rule."

This case, as I see it, does not fit within the "American rule," for appellant does not seek to recover the fees incurred in prosecuting this (the only) lawsuit against the appellees. Instead, she seeks to be made whole for her losses directly and proximately resulting from appellees' knowingly bad advice to probate a revoked will and knowing misconduct in causing that will to be probated. Because appellant, on learning the true facts, litigated the will's validity with third parties, she fortunately did not lose any of her lawful portion of her father's estate, and the costs of the prior litigation are, to a large extent, her damages. The policies underlying the "American rule" simply have no application to such a case. If appellees were ultimately found liable in this case, they would be "penalized" not for defending a lawsuit, but for their misconduct which caused appellant needlessly to engage in one with third parties. Nor is there any danger here of successive lawsuits between the same parties over attorneys' fees. The overwhelming weight of authority recognizes that "where the natural and proximate consequence of a tortious act of defendant has been to involve plaintiff in litigation with a third person, reasonable compensation for attorneys' fees incurred by plaintiff in such action may be recovered as damages against the author of the tortious act." *Annotation*, 45 A.L.R.2d 1183, 1186–87 (1956) (citing cases from 20 jurisdictions, including Illinois); *see also* A.L.R.2d Later Case Service on this annotation, adding three more jurisdictions to the list.

If the Illinois Supreme Court had taken, or could reasonably be expected to take, a different position, it would not matter that the courts of other jurisdictions have almost universally recognized the inapplicability of the "American rule" to facts such as are alleged here. Unlike my colleagues, however, I do not so understand the predictive position of the Illinois Supreme Court on this issue. That court has considered this question four times, and each time it has taken the same position as do the courts of sister states. In three nineteenth century decisions, *Philpot v. Taylor*, 75 Ill. 309 (1874); *McEwen v. Kerfoot*, 37 Ill. 530 (1865); and *Himes v. Keighblingher*, 14 Ill. 469 (1853), the court allowed a plaintiff to recover as damages the attorneys' fees incurred in earlier litigation with third parties, which litigation was directly occasioned by the defendant's wrongful acts. I see no meaningful distinction between those cases and this one. In *Ritter v. Ritter, supra*, plaintiffs sought to recover from their losing adversary in a previous suit the attorneys' fees incurred in that suit. In reversing the plaintiffs' judgment, the Supreme Court of Illinois reiterated the "American rule," which perfectly fit the facts of that case. Plaintiffs' reliance on *Philpot, McEwen,* and *Himes*, all *supra,* was found to be misplaced. In drawing the distinction, however, the court did not assume arguendo that those cases stated sound law, as it might have if the continuing validity of their holdings had appeared to the Justices to be in any doubt. Instead, the court "recognized that where the natural and proximate consequences of a wrongful act have been to involve the plaintiff in litigation with others, there may be a recovery in damages against the author of such act, measured by the reasonable expenses incurred in such litigation. . . ." 381 Ill. at 554–55, 46 N.E.2d at 44. The court expressly included attorneys' fees in such a measure, and referred to the above quoted statement of law as the "general rule" governing appropriate cases. *Id.* at 554, 46 N.E.2d 41.

This is thus a very different case from *West v. American Telephone & Telegraph Co., supra,* where a federal appellate court wrongly disregarded an intermediate state appellate court's legal judgment when that

was the only state appellate decision on point. Here, in contrast, "persuasive data that the highest court of the state would decide" that attorneys' fees are recoverable in this action is found in four opinions of that very court. *See id.,* 311 U.S. at 237, 61 S.Ct. at 188. In such a case, it seems to me that intermediate appellate decisions purporting to announce a different rule must be very persuasive indeed to control our decision. *Compare* Justice Stevens' opinion (while a judge of this court) in *Gates Rubber Company v. USM Corporation,* 508 F.2d 603 (7th Cir. 1975), where six Illinois appellate court decisions directly on point were disregarded because three recent Illinois Supreme Court decisions "presag[ed] a different" approach. *Id.* at 604.

The three appellate opinions relied upon by my colleagues do not persuade me that the Illinois Supreme Court would abandon the position it has four times taken. In *Kniznik v. Quick,* 130 Ill.App.2d 273, 264 N.E.2d 707 (1970), the court did deny attorneys' fees from divorce and child custody proceedings as damages in a husband's alienation of affection lawsuit, but the court was there faced with, and emphasized, a clearly expressed statutory public policy to limit recoverable damages in such lawsuits. Moreover, the court emphasized the conclusory nature of plaintiff's pleadings (inadequate under Illinois law) as to causality between the defendant's actions and the damages alleged, and the paragraph which termed the *Ritter* language dicta and purported to limit the earlier cases to their facts was itself dicta.

The denial of damages of investigation and attorneys' fees in *Reese v. Chicago, Burlington and Quincy Railroad Company,* 5 Ill.App.3d 450, 283 N.E.2d 517 (1972), *aff'd on other grounds,* 55 Ill.2d 356, 303 N.E.2d 382 (1973), is also unpersuasive as applied to this case. *Reese,* as pertinent here, was a noncontractual indemnity case. In such cases, a tortfeasor who has legal liability seeks to shift it to another who should bear it instead. *Suvada v. White Motor Company,* 32 Ill.2d 612, 624, 210 N.E.2d 182 (1965). "By reason of such liability the indemnitee is already subject to a suit by the injured party and no new burden of litigation costs is created by the acts of the indemnitor." *Insurance Company of North America v. J. L. Hubbard Company,* 23 Ill.App.3d 254, 318 N.E.2d 289, 296 (1974) (Trapp, J., dissenting in part). Thus, it is unnecessary to determine whether *Reese* accurately states Illinois law for indemnity situations, because in cases like this one the acts of the defendants are the direct cause of a third party litigation burden. In this regard, it is worth noting that *Reese* does not even consider the *Philpot-McEwen-Himes-Ritter* line of cases.

Nor does *Insurance Company of North America, supra (INA),* persuade me that that line of cases is no longer good law in Illinois. First, the *INA* court treated the case as involving indemnity principles, and that characterization of the case, while possibly erroneous, may have infected the result in a way inapposite here. Second, the *INA* court placed substantial reliance on the fact that the indemnitor there did not commit an affirmatively wrongful act; Count I of the instant complaint, at least, alleges such an act. Third, a strong and well reasoned dissent reduces the probative force of the *INA* opinion.

These three cases, taken alone or in conjunction, do not make the sort of compelling case that would be required to disregard *Philpot, McEwen, Himes,* and *Ritter.* My conclusion is buttressed by the fact that the Illinois intermediate appellate courts are not even unanimous on this point. *See e. g., Suvada v. White Motor Company,* 51 Ill.App.2d 318, 331–32, 201 N.E.2d 313 (1964), *aff'd,* 32 Ill.2d 612, 210 N.E.2d 182 (1965), where amounts paid in settlement, investigation, and defense of personal injury and property damage suits were held to be proper damage components in an indemnity action. I believe the Illinois Supreme Court would hold that the attorneys' fees incurred in the probate suit are recoverable damages in this suit. Viewing the case as I do, appellant's alleged damages exceed $10,000 and jurisdiction of the federal courts was properly invoked.

## II

As the district court and the majority of this court have viewed this case, the lack of federal jurisdiction makes it unnecessary to consider the adequacy of the facts alleged to state a cause of action under Illinois law. Disagreeing that federal jurisdiction is lacking, I would reach that question, and I believe the complaint is sufficient to withstand a motion to dismiss. I set out the reasons for that belief briefly to indicate why I would reverse the district court rather than affirming on other grounds.

Reading the complaint liberally, in the necessary assumption that its well-pleaded facts are true, I think factors which could be proved in support of it would, if proved, entitle plaintiff to relief under at least two legal theories recognized in Illinois. Count I alleges that defendants advised plaintiff and other members of her family to offer for probate a revoked will and later caused said will to be offered, and that all of this conduct was "intentionally erroneous and wrongful and so known by the defendants at the time of same."

Facts which could be proved in support of this claim would support an action for fraud. In *Roth v. Roth,* 45 Ill.2d 19, 256 N.E.2d 838 (1970), the Illinois Supreme Court held that a divorce decree incorporating a property settlement could be modified if the settlement was fraudulently induced, and that the record in that case contained sufficient evidence to establish the elements of fraud. The court succinctly stated the elements of fraud in Illinois:

A misrepresentation in order to constitute a fraud must consist of a statement of material facts, false and known to be so by the party making it, made to induce the other party to act, and, in acting, the other party must rely on the truth of the statement.

*Id.,* 45 Ill.2d at 23, 256 N.E.2d at 840; *accord, Roda v. Berko,* 401 Ill. 335, 339–40, 81 N.E.2d 912 (1948), where it was stated that the elements of fraud are the same when an affirmative action at law is maintained as when a defensive use, such as rescission of a contract, is attempted. It could be objected that defendants' advice here was of the nature of a legal opinion, and not a fact. There are, however, few rules of law as well established as that a revoked will is invalid, and I think it at least implicit in the defendants' advice specifically alleged that defendants, at least, believed the 1968 will to be valid. That implicit belief is a fact, and the unmentioned revocation is a fact as well. In any case, facts proved in support of this count could well establish that the defendants in their advice made some express affirmations of the validity of the will. In all other particulars, of course, it also seems to me clear that facts provable in support of the claim could establish the elements of fraud. The possibility that defendants might be seen, after trial, to have had no personal stake in the fraud (the complaint alleges none specifically) is both premature to rely on here, and legally irrelevant anyway. If the misrepresentation is sufficiently intentional, the scienter requirement is met without personal stake. *Endsley v. Johns,* 120 Ill. 469, 12 N.E. 247 (1887).

Count II of the complaint drops the allegation that defendants' conduct was intentionally erroneous and known to be such at the time, and alleges instead that they were negligent. Focusing for the purposes of this dissent only on the negligence charge as it pertains to the revoked will question, I think Count II also withstands a motion to dismiss. Causation of plaintiff's injuries being well pleaded, the dispositive issue on Count II is whether it alleges that defendants breached a duty of care owed to plaintiff. It does in terms do so. Only if we could say to a certainty that no duty was owed to plaintiff on the facts which are provable under this count could we deny plaintiff her right to proceed with the action. I think a duty cognizable in Illinois could be proved.

First, an attorney-client relationship between plaintiff and defendants would surely establish a duty of reasonable care, and I believe the complaint adequately alleges such a relationship. In *McFail v. Braden,* 19 Ill.2d 108, 116, 166 N.E.2d 46 (1960), the

Illinois Supreme Court found "ample" evidence of an attorney-client relationship upon the "sole proof . . . that [the grantor of some deeds] sought [an attorney's] legal advice for a solution of her problems, and that it was he who recommended the execution of the deeds in question." Such proof is, of course, closely analogous to what is alleged in the instant complaint. Defendants quite accurately point out that the action in *McFail* was grounded on an alleged fiduciary duty, that the attorney-client question was addressed because such a relationship establishes a fiduciary duty as a matter of law, and that the court stated its belief that a fiduciary duty could be found in that case even if it were considered that an attorney-client relationship did not exist, but that hardly distinguishes the court's initial determination that the latter relation did in fact exist.

Defendants' attempt to distinguish *McFail* on the basis that here their sole, possibly conflicting, duty was to plaintiff's brothers in the brothers' capacities as decedent's executors is, in my view, specious. Plaintiff had at least equal priority with her brothers to be the decedent's administrator in the event he died intestate. *See* Ill.Rev.Stat. ch. 3, § 96. This was apparently the case, allegedly to defendants' knowledge. There would indeed have been no executors if defendants had disclosed the true state of facts at the outset, only those, such as plaintiff, with claims to be intestate administrators. Any duties owed by defendants to plaintiff's brothers *as representatives of decedent's estate,* then, were equally owed to plaintiff.

Even if, for some formal reason, the requisites of an attorney-client relationship were not proved, a duty to plaintiff could be found.

Whether the law imposes a duty of reasonable care, in Illinois, depends on the foreseeability of injury as a result of the defendant's conduct, the likelihood of injury, the magnitude of the burden of guarding against it, and the desirability of placing that burden upon the defendant. *Harper v. Epstein,* 16 Ill.App.3d 771, 306 N.E.2d 690, 691–92 (1974). Applying this rule on a general level, I think the foreseeability and likelihood of injury are clearly alleged, the magnitude of the burden of guarding against it is rather small on these facts, and there is no one else better able to guard against it than these defendants, who prepared and witnessed the lost will which revoked the 1968 will. Moreover, getting to specifics, the tort of negligent misrepresentation is recognized in Illinois. *Rozny v. Marnul,* 43 Ill.2d 54, 250 N.E.2d 656 (1969). In *Rozny* the Illinois Supreme Court found liability on the part of a surveyor whose negligently inaccurate plat prepared for a property developer was relied on by subsequent purchasers of the property, to their detriment. Much of the court's analysis was directed to the spectre of virtually unlimited and unknown potential responsibility of a defendant when representations made to a client are circulated to a wide range of interested persons who may place reliance on them. As was found to be the case in *Rozny,* this danger does not exist here; plaintiff is one of the very group to whom defendants directly gave their erroneous advice, and a trier of fact could surely find, from evidence offered in support of this claim, that defendants knew their advice would be relied on by plaintiff. The late Dean Prosser has cogently drawn the relevant distinction:

> An attorney or a physician who gives curbstone advice when it is requested by one who is not a client or patient, is required only to give an honest answer. But where the representation, although itself gratuitous, is made in the course of the defendant's business or professional relations, the duty [of reasonable care] is usually found.

W. Prosser, Handbook of the Law of Torts § 107, at 706 (4th ed. 1971).

I note also that the *Rozny* court emphasized the "undesirability of requiring an innocent reliant party to carry the burden of a surveyor's professional mistakes" and the fact that recovery "by a reliant user whose ultimate use was foreseeable will promote cautionary techniques among sur-

veyors." *Id.,* 43 Ill.2d at 67–68, 250 N.E.2d at 663. If one changes the profession referred to, these factors apply with full force to this case.

For the reasons set out herein, plaintiff's complaint in my opinion is jurisdictionally and substantively sufficient, and I would reverse the district court's judgment and remand the case for further proceedings. I have not, of course, intended to express any opinion as to whether the plaintiff can muster the requisite evidentiary support for her allegations. That question is not before us.